REVERSED AND REMANDED FOR<br>FURTHER PROCEEDINGS.

McCown and Boslaugh, JJ., dissent.

DONALD R. HAYS, TRUSTEE, APPELLEE AND CROSS-APPELLANT,
v. ROLLIE C. JOHNSON, APPELLEE AND CROSS-APPELLANT,
BETTY J. JOHNSON ET AL., APPELLEES, IMPLEADED WITH
JOHN McARTHUR ET AL., APPELLANTS.

189 N. W. 2d 475

Filed September 3, 1971. No. 37860.

A. James McArthur, for appellants.

Christensen, Glynn & Hendricks, for appellee Donald
R. Hays.

Kenneth Cobb and J. S. Berry, for appellee Rollie C.
Johnson.

Charles S. Reed and William P. Kelley, for appellee
Virginia Reller.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

This is an action to construe the will of Merril R. Reller who died on August 1, 1968. His will was admitted to probate and his estate administered by proceedings in the county court of Lancaster County, Nebraska. The will was executed on June 11, 1968.

The controversy here concerns the Commercial Center which is a tract of land lying north of Cornhusker Highway and west of 40th Street in Lincoln, Nebraska. The Commercial Center includes a large trailer court and a number of business buildings and was valued in the estate proceedings at $322,635. It was purchased by the deceased in 1949.

Paragraph III of the will devised the Commercial Center in trust to Donald R. Hays, subject to terms and conditions set out in the will. This action was brought by Donald R. Hays to obtain a construction of the will in regard to his duties as trustee. The defendants are Virginia Reller, the widow of the deceased; Herbert Reller, Helen Reller, and Carl R. Reller, heirs-at-law of the deceased; and Rollie C. Johnson, Betty J. Johnson, Gordon Reller, Sally A. Hays, John McArthur, and A. James McArthur.

The will provides generally that the Commercial Center shall be held in trust during the life of Virginia Reller and for 5 years thereafter, with the remainder to Donald R. Hays and Sally A. Hays, John McArthur, and Rollie C. Johnson. The will provides what is to be done in the event of a sale of all or part of the Commercial Center and provides for contingent beneficiaries.

Paragraph III (C) of the will provides in part: "The present method of conducting business, rentals and divisions of profits shall be continued as near as practicable and that the share of the profits received therefrom,

now received by Merril R. Reller, shall be paid by the trustee to Virginia Reller, with the express provision that if, at any time, the net rentals and income received by Virginia Reller, after payment of management fees, taxes and upkeep, is less than $1,000.00 per month net to Virginia Reller for a period of three months consecutively, then Virginia Reller may, at her option, require the Commercial Center to be sold, and this power of sale, should above conditions arise, shall be absolute and without question. I specifically provide that so long as the $1,000.00 per month is received by Virginia Reller, whether it come from actual rentals or personal contributions by any of the parties having a surviving interest therein, that the power of sale provided herein not be exercised."

The controversy centers around this part of the will. The language of the will itself is unintelligible in the absence of extrinsic evidence as to the "present method of conducting business, rentals and divisions of profits." Such evidence is admissible to show the attendant circumstances under which the will was made and to enable the court to place itself in the situation of the testator. Davis v. Wirth, 178 Neb. 74, 131 N. W. 2d 718; In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704; Little v. Giles, 25 Neb. 313, 41 N. W. 186.

The record shows that after the Commercial Center was purchased by the testator, it was operated by the testator, John McArthur, and Rollie C. Johnson. After 1962, Donald R. Hays participated in its operation. McArthur and Hays were associated with the testator in the practice of law. Johnson worked full time and had the direct management of the trailer court.

The answer filed by the defendants John McArthur and Sally A. Hays alleged that the persons who were active in the management of the Commercial Center had "acquired interest therein in unequal amounts" and prayed that the court "confirm the rights and interests of all of the parties hereto."

The trial court found that the record title to the Commercial Center was in the testator at the time of his death and that the evidence did not show the existence of a partnership composed of the testator, John McArthur, Rollie C. Johnson, Donald R. Hays, Sally A. Hays, or any of them.

The defendants John McArthur and Sally A. Hays have appealed. The plaintiff, Donald R. Hays, and the defendant Rollie C. Johnson have cross-appealed.

To the extent that the plaintiff and any of the defendants claimed any interest in the Commercial Center, other than as beneficiaries under the will of the deceased, their interest was adverse to that of the deceased and his representatives, and their testimony as to transactions and conversations with the deceased was not admissible under section 25-1202, R. S. Supp., 1969. Reitz v. Petersen, 131 Neb. 706, 269 N. W. 811; Gerdes v. Omaha Home for Boys, 166 Neb. 574, 89 N. W. 2d 849.

The remaining evidence does not sustain the appellants' claim in regard to a partnership. There are no partnership records, in the usual sense, for the Commercial Center. There are no books of account, and the Commercial Center had no checking account. A written agreement, dated July 3, 1966, signed by the deceased, John McArthur, Donald R. Hays, and Sally A. Hays was received in evidence. This agreement referred to a partnership engaged in the *operation* of a business known as the Commercial Center. The agreement further provided that legal title to the Commercial Center would remain in the deceased and that he would "maintain in effect a will which preserves the interests of all the remaining partners in the said Commercial Center." The agreement indicates that the deceased may have intended to contribute only the *use* of the property to the alleged partnership and that no other party would acquire any interest in the Commercial

Center except by devise. See Norcross v. Gingery, 181 Neb. 783, 150 N. W. 2d 919.

The evidence shows that Rollie C. Johnson collected the rentals from the trailer court and from some of the tenants in the business buildings and accounted to the deceased monthly. Johnson paid certain expenses out of the rentals, deducted his share of the rentals, and then remitted the balance to the deceased.

The record contains partnership income tax returns filed in the name of the Commercial Center for each year from 1950 to 1967, inclusive. The 1967 return shows a net profit of $25,475.33 with the partners' respective shares of income as follows: The deceased, John McArthur, and Donald R. Hays, $5,095.07 each; and Rollie C. Johnson, $10,190.12. There is no other competent evidence showing that these amounts were actually received or credited to the parties involved. Except for the share of the rentals retained by Rollie C. Johnson and several isolated payments to Mr. and Mrs. Hays, the evidence does not show that anyone other than the deceased ever received any part of the income from the Commercial Center. The evidence shows that the deceased received all of the income except that retained by Rollie C. Johnson and does not show that any of it was actually distributed by him to the others listed in the partnership returns.

The trial court found that there was some evidence of a working relationship in the management of the Commercial Center between the deceased and the appellants and the cross-appellants, but that the evidence would not sustain a finding that there was a partnership or that any of the appellants or cross-appellants were entitled to share in the income from the Commercial Center during the life of Virginia Reller. These findings are sustained by the record.

The trial court found that the trustee should pay the net income from the operation of the Commercial Center to Virginia Reller monthly during her lifetime. In de-

termining the net income the trustee was authorized to deduct all operating expenses, including the remuneration to be paid to Rollie C. Johnson, repairs, taxes, and fees allowed by the county court. The trial court limited expenditures by the trustee for the replacement of machinery, appliances, equipment, fixtures, and other depreciable property to 5 percent of the annual gross income of the Commercial Center. This limitation was intended as a guideline for the trustee and is subject to modification in the event circumstances show that the limitation should be changed.

The trial court directed the trustee to continue to employ Rollie C. Johnson and limited his compensation to an amount not to exceed that received in 1967. This direction is subject to modification in the event of a change in circumstances.

The trustee complains that the trial court improperly restricted his authority to make capital improvements by requiring him to obtain the written consent of Virginia Reller for all such improvements. In Paragraph III(B), the will provides in part that "the trustee shall have the power to authorize capital improvements," and "use such portion of Virginia Reller's income therefrom for capital improvements, if she so agrees in writing." The trial court defined capital improvements as improvements to the real estate as distinguished from replacement of depreciable property, such as machinery and appliances, and ordinary repairs. With this understanding, we think the trial court's interpretation of the will was correct.

The judgment of the district court is affirmed.

AFFIRMED.

CLINTON, J., concurring.

I concur in the result only. The majority opinion seems to say that there is no competent evidence from which a finding could be made that those persons designated as remainderman beneficiaries in the property known as the Commercial Center are entitled under

Paragraph III (C) of the will to share the income from the Commercial Center during the lifetime of Virginia Reller. It further seems to imply that there must have been an actual distribution of income to the partners or credit on books of account in order to support a finding of a partnership in income. With this I disagree.

The filing of partnership income returns from 1950 through 1967 showing the income shares of the partners, together with the agreement of July 3, 1966, executed by Merril Reller and certain of the others, was, in my opinion, sufficient to support a finding that the "present method of conducting business rentals and division of profits" was a partnership in which the remainderman had an income interest.

There is evidence in the record which, if believed, would support a finding that it was not a bonafide partnership. I concur in the result because I believe the trial judge, who observed the witnesses and their manner of testifying, must have concluded on the basis of this evidence that there was in fact no partnership based on services accompanied by actual income sharing.